36767

# Note and Security Agreement

| DATE: Month / Day / Year | For Office Use Only |
|---|---|
| 07/31/03 | RBC \| Dealer \| Transaction # |

Borrower(s) Name(s) and Address(es)

LINDA M BALLARD
JEANETTE A PADONAN
2085 B N SAN JOAQUIN RD
TUCSON, AZ 85743

Lender Name and Address

HOMEPRIDE FINANCE CORP.
10801 MASTIN BLVD.
BLDG. 84, SUITE 500, DEPT A
OVERLAND PARK, KS 66210

## 1. Definitions:

The words "I," "me," "my," and "us" mean each person named here as Borrower and who signs this Security Agreement (this "Agreement") below as a Borrower, including individuals, partners, corporations, trustees, and, where applicable, any Other Owner, and the personal representative, successors and assigns of the Borrower(s), and any Other Owner. The words "you" and "your" mean HomePride Finance Corp. or any other holder of this Agreement to whom it may be assigned ("Assignee"). If this Agreement is signed by a corporation, partnership or trust, the words "I," "me," "my," and "us" may also mean the corporation, partnership or trust. The term "Commodity" as used in this Agreement shall mean the commodity described below, including attachments, equipment, accessories and related services.

## 2. Commodity and Equipment (Describe):

| New Or Used | Year And Make | Series, Make or Trade Name (Also No., if Applicable) | Will be Kept at (County And State) |
|---|---|---|---|
| NEW | 2003  CHAMPION | MH | |

| Description | Identification No. (Serial or Motor No.) | State Registration No. |
|---|---|---|
| | 15702033A | |

☐ Air Cond./Serial No. _____
☐ Washer/Serial No. _____
☐ Range/Serial No. _____
☐ Other (Describe) _____
☐ Dryer/Serial No. _____
☐ Refrigerator/Serial No. _____
☐ Awnings  ☐ Skirting  ☐ Furniture

Will be kept at   2085-B N. SAN JOAQUIN RD.
                 PIMA                              AZ
                 County                            State

## 3. Promise to Pay:

I will pay you the Loan Amount plus interest at the rate of __12.990__ % per year ("Agreed Rate of Charge") until my loan is paid in full; however, interest after the final scheduled maturity date (the scheduled due date of my final payment) shall not exceed the maximum rate allowed by state law. The Loan Amount includes any Prepaid Finance Charge you advance for me. When you calculate interest, every year shall have 360 days and every month shall have 30 days. I promise to pay the Loan Amount and interest by paying you monthly payments in the number and amounts of payments shown in the payment schedule set forth on the separate Disclosure Statement that is part of this

SEE PAGES 2, 3, 4, 5, 6 AND 7 FOR ADDITIONAL IMPORTANT TERMS

07/30/03  11:58  1651147                                      Initial(s) X___  X___
2-3838A (01/03) MH Federal Preemption AZ Security Agreement
                                                                            Page 1 of 6

Agreement. My first payment will be due on the first date shown in the payment schedule, and subsequent payments will be due on the same day of each month after that. I will make each scheduled payment on or before its due date until I have paid in full the Loan Amount and interest. Each payment will be applied as of its scheduled due date. The final payment in all cases will be the unpaid Loan Amount plus accrued and unpaid interest.

4. **Physical Damage Insurance:** ☐ (Check box and insert dollar amount if a coverage limit of more than $300,000.00 is required.)

$_____. See section 16 "REQUIRED HAZARD INSURANCE" of this Agreement for other insurance provisions.

5. **Loan Amount:** You have loaned me $ __74,554.68__ (the "Loan Amount"). See section 3 "PROMISE TO PAY" of this Agreement to see how my interest will be computed.

6. **Governing Law:** Except to the extent preempted by federal law including without limitation section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980, this Agreement shall be governed by the State of Arizona.

7. **Customer Service Number:** If I have any questions about any billing error, I will call you at 1-800-621-1433 or write to you at P.O. Box 24610, Oklahoma City, Oklahoma 73124-0610, ATTN: Customer Service Department.

8. **Payment of Loan Proceeds:** A letter showing you how and to whom the loan proceeds are to be paid signed by me is attached as Exhibit "A" and is part of this Agreement. Any holdback pending completion of further work or installation of additional equipment on the Commodity must be covered by such letter.

9. **REBATE FOR PREPAYMENT: AT ANY TIME, I HAVE THE RIGHT WITHOUT PENALTY TO PAY THIS CONTRACT IN FULL OR TO PAY MORE THAN MY SCHEDULE REQUIRES.** You earn the Prepaid Finance Charge when this loan is made and no part of it will be refunded if I pay in full ahead of schedule.

10. **Late Charge; Dishonored Check Charge:** Each time I fail to make a payment in full within 15 days of the date it is due, I will pay a late charge of ten dollars ($10.00). Only one late charge may be collected on any installment no matter how long it remains in default. If a check, draft or similar instrument I give you for payment on my account is not paid or is dishonored by my financial institution, I will pay a dishonored check charge of $25, plus the actual charge imposed on you by your financial institution for handling my dishonored check, or the maximum amount allowed by law, if less.

11. **Each Signer Liable:** Each person who signs this Agreement as Borrower is separately and individually obligated to pay the entire amount and to keep all promises owing under it. You may require that any one Borrower pay the entire amount of the Agreement without asking any other person to pay. You do not have to notify me that this amount has not been paid by any other person. You do not have to notify one Borrower that another has defaulted under this Agreement. You may sue one or more parties. My obligation to pay is absolute and unconditional.

12. **Security Interest:** I have granted you a security interest under the Uniform Commercial Code in the Commodity and all proceeds thereof and accessions thereto until I have paid the balance in full and completely satisfied all other requirements of this Agreement and any modifications to it. Despite any other provision of this Agreement, however, you are not granted, and will not have, a nonpurchase

Ballard, Linda    SEE PAGES 1, 3, 4, 5 AND 6 FOR ADDITIONAL IMPORTANT TERMS
07/30/03    11:58    1651147
2-3888B                                                               Initial(s) X_____ X_____

Case 4:18-bk-11788-SHG    Doc 9-1    Filed 10/24/18    Entered 10/24/18 15:04:12    Desc
Exhibit A    Page 2 of 6

money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I assign to you any insurance proceeds relating to the Commodity, including return or unearned premiums for application to the unpaid balance. I direct any insurer to pay you directly. In the event of default, you may cancel all insurance and credit any refund to the unpaid balance. I waive all marital rights, homestead exemption and all other exemptions relating to any property in which I have granted you a security interest, as permitted by law. Your security interest also includes all claims of damages or compensation with respect to the Commodity and proceeds of all policies of insurance on the Commodity including all claims of any nature and return of premiums. Following any repossession of the Commodity, any equipment installed in the Commodity more than 10 days after the date of this Agreement which does not technically become part of the Commodity and was not included in the Loan Amount will be returned to me upon my request. However, as you may have trouble identifying such equipment, I will identify it for you as soon as you notify me of a repossession. If I do not claim such articles within 45 days after you tell me where they can be claimed, you may dispose of them in any manner the law allows. Instead of repossession at a distant location, you may demand that I deliver the Commodity to a location acceptable to you in the state where the Commodity was supposed to be kept under this Agreement.

**13. Default:** If you accept late payments or partial payments, that does not mean you will accept other late or partial payments. If I do not make any of my scheduled payments, or if I do not comply with any other requirements of this Agreement, or if bankruptcy or insolvency proceedings are brought by or against me, I shall be in default of this Agreement. In the event of my default, you will send a written notice to me and I will have thirty (30) days to cure the default described in the notice. You are not obligated to send to me a notice of default more than twice in any one year period. If I fail to cure the default described in the notice within such thirty (30) day period, you may, but shall not be obligated to, accelerate (i.e., make immediately due and payable) all financial obligations secured by this Security Agreement and may repossess and dispose of the Commodity. If I default and you refer this Agreement to an attorney, not your salaried employee, for collection, I agree to pay your reasonable attorney's fees of not more than 15% of any amount that I owe you plus court costs. If I have not met the requirements of this Agreement, after required notices you may repossess the Commodity with or without court order and you can peaceably enter my premises or any location where the Commodity is stored to do so. You have all the rights of a secured party under the Uniform Commercial Code. You will notify me within 15 days after repossession. You will also notify me of my rights to redeem the Commodity for past due installment(s) or the full balance and repossession and other allowable expenses and of any right I may have to require a resale of the Commodity. If I have not paid enough to be able to require a resale and if I do not redeem, you may give me a written notice under the Uniform Commercial Code that you intend to keep the Commodity and waive any claim against me for a deficiency. In any case, you may give me a 10-day written notice of the date, time and place of public sale or the time after which you will try to resell the Commodity at private sale if not prohibited by law or by an option of yours timely exercised. If you foreclose judicially, the court will decide on the foreclosure procedure. You may resell the Commodity to a dealer. The expenses you may deduct in addition to the principal and accrued interest are costs of repossession, moving, storage, repair and refurbishing for resale, maintenance, insurance, advertising, auctioneer's or other sales or brokerage commission, allowable attorney's fees and court costs. After applying the net resale proceeds (after allowable costs and expenses) to my balance under this Agreement, you will pay any money left over to me or I will pay any deficiency to you.

**14. Change of Name or Residence:** I will notify you in advance before I change my name or residence or the state in which the Commodity is registered or titled or principally kept.

**15. Liens - Use of Commodity - Proceeds - Notices:** I agree to keep the Commodity free from all liens, and I will not permanently move it from the address(es) shown in section 2 of this Agreement, unless you agree in writing. I won't sell or give the Commodity away, rent it out, use it illegally, or subject it to waste.

SEE PAGES 1, 2, 4, 5 AND 6 FOR ADDITIONAL IMPORTANT TERMS

Initial(s) X_____ X_____

2-3888C
Ballard, Linda
07/30/03    11:58    1651147

Page 3 of 6

Case 4:18-bk-11788-SHG    Doc 9-1    Filed 10/24/18    Entered 10/24/18 15:04:12    Desc
Exhibit A    Page 3 of 6

You are entitled to any proceeds from the sale of the Commodity, but this right does not waive any rights you have in the Commodity and does not permit me to sell or transfer the Commodity in violation of this Agreement. The Commodity will remain personal property and will not become part of my real estate. Any notices you send me are sufficient if sent to my address as shown on this Agreement.

**16. Required Hazard Insurance:** I must insure the Commodity against loss by fire, and other hazards included within the term "extended coverage." Whenever the Commodity is transported on the highway, I must have trip insurance. Whenever the Commodity is located in an area that has been identified by the Federal Emergency Management Agency as an area having special flood hazards, I must get flood insurance. The "Required Insurance" must be in an amount equal to the lesser of the actual cash value of the Manufactured Home or the remaining unpaid balance owing under this Agreement, with deductibles not to exceed $500 (the "Minimum Coverage"). The Required Insurance must (1) be issued by an insurer and have terms and conditions satisfactory to you, (2) name "HomePride Finance Corp. and its successors and assigns, as their interests may appear," as loss payee, (3) not permit the addition of any other loss payee to the insurance policy, unless you consent in writing, (4) provide that such insurance will not be canceled or modified without at least 30 days prior written notice to the loss payee, and (5) not include any disclaimer of the Insurer's liability for failure to give such notice.

I have the right to purchase insurance or provide existing coverage through any insurance company or agent of my choice that is reasonably acceptable to you.

I agree to keep the Required Insurance in force until all amounts I owe you under this Agreement are paid in full. I will provide you with the original insurance policy, or other proof satisfactory to you of the Required Insurance. I will provide you with proof of renewal of the Required Insurance at least 30 days prior to any scheduled termination. I grant and assign to you the proceeds of any and all insurance coverage on the Commodity, including optional coverage, such as earthquake insurance, which in type or amount is beyond the Minimum Coverage. In the event of a loss to the Commodity, I shall give prompt notice to you and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, you may do so on my behalf. In the event of loss or damage to the Commodity, you may require additional security or assurances of payment before you allow insurance proceeds to be used to repair or replace the Commodity. You may, if you want, use any insurance proceeds to reduce any amounts owing under this Agreement. I authorize you to adjust my losses, and sign my name to any check, draft or other papers necessary to obtain such insurance payments. I authorize any insurer to pay you directly. If insurance proceeds paid to you do not pay off all amounts I owe you under this Agreement in full, I am responsible for the balance.

If at any time I fail to buy or keep in force the Required Insurance, you may (but are not required to) get it for me, at my expense. I agree that, to the extent permitted by law, any insurance you purchase may be for the protection of only your interest in the Commodity, may not fully protect me in the event of a loss, and may be for such reasonable period as you determine. If you decide, in your sole discretion, to obtain insurance, you will notify me of that fact. I understand that the insurance premiums may be higher if you must purchase the insurance than might be the case if I had purchased the insurance. I agree that you or one of your affiliates may earn a fee or commission in connection with placement of any insurance sold in connection with this Agreement to the extent permitted by law. I authorize you to release to third parties any information necessary to monitor the status of insurance on the Commodity, and to get the insurance described in this Agreement.

If you have purchased any insurance on my behalf, at my expense, and if I prepay in full all amounts I owe under this contract, (1) you will provide me with any notice required by applicable law, and (2) I have the right to cancel the insurance and receive a refund or credit of unearned premiums or to continue the insurance, but unless I specifically request cancellation, the insurance will remain in effect until the scheduled expiration date.

SEE PAGES 1, 2, 3, 5 AND 6 FOR ADDITIONAL IMPORTANT TERMS

07/30/03   11:58   1651147   Initial(s) X_RB_ X_____

BALLARD, LINDA

Page 4 of 6

Case 4:18-bk-11788-SHG   Doc 9-1   Filed 10/24/18   Entered 10/24/18 15:04:12   Desc
Exhibit A   Page 4 of 6

**17. Taxes and Assessments:** I will pay when due any park or lot rent or related charges, and all taxes, fees, expenses, and assessments on or against the commodity.

**18. Assignment of Agreement - Representations - Promises - Modifications:** If you assign this Agreement to someone else, I understand that you will not act for the other party or receive payments or for any other purposes. No representation or promise is binding on you, unless included in this Agreement. No change in this Agreement will be binding if it is not in writing and signed by you and me. All of your rights are cumulative. If anything in this Agreement is not valid or consistent with law or regulations, it can be considered modified or deleted so that it complies and the rest of this Agreement will stay in effect.

**19. Advances to Protect the Commodity:** You may, but are not required to, (1) pay taxes, insurance premiums, fees, expenses, charges or assessments relating to the Commodity, (2) satisfy liens on, or (3) make repairs to the Commodity if I have not done so as required in this Agreement. Any amounts you pay may be added to the balance I owe you and will be secured by the Commodity. At your sole option, you may (1) demand that I repay these amounts immediately, (2) add these amounts to my regularly scheduled payments, (3) add these amounts as additional installments due, (4) add these amounts to the final installment due on this Agreement, or (5) demand that I repay these amounts in any other manner you request that complies with applicable law. I will pay you interest at the Agreed Rate of Charge on any amounts not repaid immediately by me.

**20. Credit Insurance Election**
*CREDIT INSURANCE IS NOT REQUIRED BY LENDER AND IS NOT A FACTOR IN THE APPROVAL OF THIS LOAN. The undersigned (check applicable boxes):*

- ☐ Request(s) Credit Life Insurance on the life of the Customer who first signs below, the cost of which is shown in the Itemization of Amount Financed for the term of _____ months.
- ☐ Request(s) Joint Credit Life Insurance on the lives of both Customers, the cost of which is shown in the Itemization of Amount Financed for the term of _____ months.
- ☐ Request(s) Credit Accident and Health Insurance on the Customer who first signs below, the cost of which is shown in the Itemization of Amount Financed for the term of _____ months.
- ☒ Do(es) not want any Credit Insurance.

_Linda M. Ballard_ _____    _Jeannette A. Padonan_ _____
Customer's Signature to above statement    Date    Co-Customer's Signature to above statement    Date

The issuer of Credit Life and Credit Accident and Health Insurance is _____ whose home office is located at _____.

Within thirty days of coverage, but subject to the acceptance of the risk by _____ an individual policy or certificate will be delivered to the insured.

**21. Original and True Copies of this Agreement:** This Agreement may be signed and then multiple copies made thereof as necessary, but only the document bearing original signatures shall be deemed the Original. No ownership interest in this Agreement or security interest in the Commodity may be created other than through possession of the Original.

SEE PAGES 1, 2, 3, 4 AND 6 FOR ADDITIONAL IMPORTANT TERMS

Initial(s) X_LB_ X_JP_

2-3888E
Ballard, Linda
07/30/03   11:58   1651147

Page 5 of 6

ON THE DAY and year written below, I have signed this Agreement or, if a corporation, partnership or trust, have caused this Agreement to be signed in the corporate, partnership or trust name, as appropriate (and sealed, if a corporate seal has been adopted) by the proper corporate officers, partner(s) or trustee(s) who were properly authorized to do so. I certify that any corporation, partnership, or trust signing this Agreement is duly incorporated or formed in good standing under the laws of the state of its incorporation or formation, as the case may be.

All the terms on the pages hereof, as well as the separate Truth-in-Lending Disclosure Statement, are a part of this Agreement.

I ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT FULLY COMPLETED AND SIGNED. READ BEFORE SIGNING.

SEE PAGES 1, 2, 3, 4 AND 5 FOR ADDITIONAL IMPORTANT TERMS.

*Linda M. Ballard* (Seal) *Jeanette A. Padonan* (Seal)
LINDA M BALLARD  Borrower #1    JEANETTE A PADONAN  Borrower #2
Date: 7/31/03  Witness: Barbara Rivera    Date: 7/31/03  Witness: Barbara Rivera

_____(Seal)    _____(Seal)
Borrower #3                              Borrower #4
Date: _____ Witness: _____        Date: _____ Witness: _____

---

**For Spouse with No Liability on the Loan**

I am signing this Agreement only to give you a security interest in the Commodity. I agree to all of the terms and conditions of this Agreement. I am also waiving any homestead and marital rights to the extent permitted by law. However, I have no personal obligation to pay the Loan Amount.

Signature of Non-Obligor Spouse _____    Date _____

Printed Name _____    Witness _____

---

**ACKNOWLEDGMENT**

STATE OF ARIZONA
COUNTY OF PIMA    SS.

TIMOTHY S. HAGGERTY
Notary Public – Arizona
Pima County
Expires 07/31/05

Before me, a Notary Public in and for said County and State, personally appeared LINDA M. BALLARD JEANETTE A. PADONAN, and acknowledged the execution of the foregoing Security Agreement as his/her/their voluntary act and deed.

WITNESS my hand and Notarial Seal this 31st day of JULY

My Commission Expires: 7-31-05

Notary Public
TIMOTHY HAGGERTY
(Printed Signature)

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

2-3888F
07/30/03   11:58   1651147

Page 6 of 6

Case 4:18-bk-11788-SHG   Doc 9-1   Filed 10/24/18   Entered 10/24/18 15:04:12   Desc
Exhibit A    Page 6 of 6